PETER F. CUMMINGS, RESPONDENT, v. POLICEMEN'S PENSION COMMISSION OF THE BOROUGH OF BELMAR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT.

Submitted October term, 1931—Decided May 16, 1932.

For the respondent, *Lester C. Leonard.*

For the appellant, *Edward A. Markley.*

The opinion of the court was delivered by

CASE, J.   The relator, on petition, rule to show cause, stipulation and depositions, was allowed a peremptory writ of *mandamus* out of the Supreme Court directing the policemen's pension commission of the borough of Belmar to take certain preliminary steps to enable that commission to consider the relator's application for retirement and pension.   To allow an appeal to be taken the Supreme Court justice, before whom, sitting alone in chambers, the matter was heard, permitted the pleadings to be moulded, vacated the peremptory writ and ordered counsel for the respondent to prepare an alternative writ of *mandamus* so framed as upon demurrer the precise questions decided by him for the Supreme Court would be presented on appeal.   An alternative writ of *mandamus* thereupon issued, demurrer was filed, rule overruling the demurrer was entered, and, on order, the moulded pleadings were filed and judgment entered.   From that judgment the respondent appeals and writes down nineteen causes.

The alternative writ does not set forth facts essential to withstand a demurrer.   It does no more than allege that the borough of Belmar had adopted the provisions of the Policemen's and Firemen's Retirement act (*Pamph. L.* 1920, *ch.* 160, *p.* 324), that section 2 of that act provides in the manner recited, that on May 17th, 1930, the relator wrote the respondent as follows:

"I hereby apply for retirement on pension from the Belmar police department, as provided for in section 2, chapter 160, of the laws of 1920.   Will appear for examination by police physician at any time that may be convenient to you, thanking you.   Yours very truly, Peter F. Cummings."

And that notwithstanding that letter the respondent failed to call the aid of the physician.   There is no allegation that the relator was or had been a member of the police department, that he had suffered any disability either permanent or

temporary, or that he had met with injury or disease. The relator is not brought within the purview of the statute that he recites and therefore he may not summon the respondent to action. The matter of inducement stated in the alternative writ should include everything necessary to show jurisdiction over the subject of the writ and to warrant its mandate, and these facts should be stated with precision and issuably. The affidavits and papers of the relator on which the order for the *mandamus* is granted form no part of the record, and cannot be used to supply essential facts or be considered in deciding a demurrer. *Fairbank* v. *Sheridan,* 43 *N. J. L.* 82. The evidence upon which the writ issues is not a part of the record. *Pleasantville* v. *Pleasantville Water Co.,* 76 *Id.* 343, 347.

The function of a demurrer is, admitting the facts alleged by the alternative writ to be true, to challenge the right of the relator, on those facts, to compel the respondent to proceed further. The demurrer occupies the same relative position to the writ of *mandamus* as it did, under the old practice, to the declaration in personal actions. *Kenny* v. *Hudspeth,* 59 *N. J. L.* 504, 530. Its office is not to allege facts. The demurrer in the instant case, under the guise of setting out causes of demurrer, improperly undertakes to set up a series of facts which are in the nature of a defense by way of confession and avoidance and would properly appear in a return; as, for instance, that the relator was discharged from the police force for cause and on charges.

Stipulations appear in the printed book wherein counsel for the parties say that "the pleadings as now moulded are the result of an honest attempt on the part of the attorneys for both parties to so mould the pleadings that an appeal may be taken" and that the evidence taken under the rule and also the written report of a physician are to be considered by the Court of Errors and Appeals in determining whether or not the judgment of the Supreme Court is to be affirmed. Counsel undertake to set up a novel practice. They ignore that orderly procedure by which an issue, either of law or of fact, is presented; if of law, to be determined by the court (*Kenny*

v. *Hudspeth, supra*), if of fact, to go to the Circuit for a jury trial like any other case. *Freda* v. *Societa Di Mutuo,* 106 *N. J. L.* 17. Orderliness and precision in pleadings are not technical snares devised by meticulous minds for the trapping of the unwary. They are essential parts of a procedure designed to enable litgants to make issue of their differences and receive judicial determination with as much expedition and as little legal machinery as is consistent with the administering of justice. However, we shall treat the demurrer as a denial of the right of the relator in point of law to proceed upon the facts stated in the writ. As such the demurrer should have been sustained.

The final point presented on appellant's brief is that *Pamph. L.* 1927, *ch.* 210 ("a supplement to an act entitled 'An act relative to writs of *mandamus*'—Revision of 1903— approved April eighth, one thousand nine hundred and three"), approved March 28th, 1927, under which the Supreme Court justice, sitting alone in chambers, heard the rule to show cause and granted the peremptory writ of *mandamus,* is unconstitutional in that a writ of *mandamus* is one of the prerogative writs of the Supreme Court and that the statute is an attempt on the part of the legislature to deprive the Supreme Court of a power which inhered in that court at the time of the adoption of the constitution and is in direct conflict with sections 1 and 5 of subdivision 1 of Article VI of the constitution, citing *Traphagen* v. *Township of West Hoboken,* 39 *N. J. L.* 232, and *New Brunswick* v. *McCann,* 74 *Id.* 171.

Section 3 of an act entitled "An act relative to the Supreme and Circuit Courts," approved April 16th, 1846 (*Rev. Stat., p.* 196—reincorporated from section 4 of an act approved March 24th, 1845, *Pamph. L.* 1845, *p.* 154), authorized the justices of the Supreme Court to designate one or more of their number to sit separately during term time for the purpose of hearing and deciding all such matters as, by the rules of the said court, were or might be denominated common business. The Court of Errors and Appeals, in 1855, in the case of *Wood* v. *Fithian,* 24 *N. J. L.* 838, considered and

supported the constitutionality of that legislation in its immediate application to the hearing and determination of a *certiorari* proceeding by one of the justices sitting alone during term time in a separate chamber from the justices who were engaged in hearing cases "on the paper." In the course of the opinion it was said that the power was undoubtedly in the legislature to enact that "all these matters of common business might be heard by a justice at chambers * * *." If an application for a writ of *mandamus* comes within the classification of common business, then we have the expression of this court, given more than seventy-five years ago, as well as a further determination presently to be noted, affirming the power of the legislature to enact legislation such as that in controversy.

The Supreme Court rules as revised and adopted at the February term, 1805, contained, under the title "Of Common Business," provision that common business, for the purpose of that title, included all matters not directed, either by law or rule of court, to be put "in the paper." *Coxe, p.* 14. The matters required by the then extant rules, under the title "Of New Trials, Arguments, &c.," to be set down by the clerk on the paper were "all issues in law, and demurrers to evidence; on all special verdicts and special cases, and on all rules to show cause on motions for new trial and in arrest of judgment, and on motions to set aside awards and reports of referees." *Coxe, p.* 12. Writs of *mandamus* and writs of *certiorari* were both classed as common business, although in the May term, 1814, the court ordered that thereafter causes brought up by writ of *certiorari*, except in certain cases, should be brought to hearing upon the terms prescribed under the rule "entitled 'Of New Trials, Arguments, &c.,' and not as common business as heretofore." *Coxe, p.* 16. But this latter provision was later omitted and in 1854 as appears by the rules of the Supreme Court published in that year by William M. Force, clerk, rule 41 provided that "all cases to be argued on the following matters, shall be set down by the clerk on the paper, that is to say, demurrers to evidence; demurrers to pleadings; motions to set aside verdicts, non-

suits, reports of referees and auditors, awards and inquisi-
tions; issues of law on writs of error; special verdicts;- cases
reserved at trial; cases agreed between the parties without
trial; and that other matters not by this rule directed to be
placed on the paper, shall come on to be heard at the times
allotted to the hearing of common business; and it is further
ordered, that the court may at any time direct in any par-
ticular case any matter not above enumerated, to be set down
in the paper, when in their opinion the case may require it;"
and writs of *mandamus*, still, and writs of *certiorari*, again,
were classed as common business. It was at this stage of the
rules that *Wood* v. *Fithian, supra*, was decided. Rule 41
later became rule 34.

Neither writs of *certiorari* nor writs of *mandamus* are
within the matters thus required to be set down on the paper.
These prerogative writs were classed with common business.
The writ of *certiorari* was specifically stated so to be in *Wood*
v. *Fithian, supra*. Supreme Court rules 73 to 79 inclusive
as extant prior to the adoption of the revised rules of 1900
constituted Article XVII of the rules and were entitled
"Common Business, &c.," but do not further define what that
common business consisted of. Nevertheless *Corbin's New
Jersey Court Rules (2d ed.*—1898), notes under this title
that "all the business of the Supreme Court at bar is com-
mon business except such as is required to be put on the list."
By the Supreme Court rules as revised November term, 1900,
effective February term, 1901, former rule No. 34, above re-
ferred to, became rule No. 29, with changes not important to
this discussion. Under the present revision of the rules, such
parts of the rule last known as 29, and theretofore as No. 34 as
are still preserved are in rule No. 150, and by the last named
rule those matters that were earlier required to be "set down
on the paper" are reserved for hearing before Part I of the
Supreme Court and applications for *certiorari*, rules to show
cause why a writ of *mandamus* should not issue and applica-
tions for all rules to show cause are fixed for hearing before
Part II. Matters portaining to writs of *mandamus* and to
writs of *certiorari* are obviously still classed as common busi-

ness. The listing of causes has ceased to be a distinguishing feature because the clerk, by present rule 151, is directed to prepare a list of all matters for hearing on argument at the term, dividing the same into three divisions containing respectively the matters proper to be heard before the several parts of the court and directs that "there shall be a call of the list for litigated common business after the disposition of common business not litigated." Although the putting on the list has ceased to be a distinction between matters that are and that are not "common business," we have looked back into the period in which that expression was given its meaning and we have found not only that the writ of *mandamus* came within that title, but that the writ of *mandamus* and the writ of *certiorari* came within the same field of judicial operations. The importance of the last observation is that in *Dubelbeiss* v. *West Hoboken,* 82 *N. J. L.* 683, affirming (so far as the matters under discussion are concerned) on the opinion below by Mr. Justice Parker, 81 *Id.* 98, this court has already determined that the writ of *certiorari* is common business and that the legislature was therefore empowered to make that writ cognizable before a single justice at chambers. The reasoning contained herein and in the Dubelbeiss opinion makes it clear that the cases, *supra,* cited by appellant do not apply. We conclude that the writ of *mandamus* is within the class of common business, that it was competent for the legislature in facilitating the transaction of such business to make the writ cognizable before a single justice and that the act of 1927 is constitutional.

For the reasons first above given the judgment will be reversed, but without prejudice. Counsel for the respondent (below) was ordered by the court below to prepare an alternative writ of *mandamus* so framed as, upon demurrer, to present the identical questions decided by the court below on the rule to show cause. The alternative writ does not do that. The respondent should not profit by this omission. It remains the duty of its counsel to prepare an alternative writ that by way of inducement shall recite the facts upon which the court below originally allowed the peremptory writ. When such

a writ is prepared and demurred to, and the other essential steps in the moulding of pleadings are taken, the matter may be presented anew. Costs will abide the final determination.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 13.