## A98A1426. BIGLEY et al. v. MOSSER.
(509 SE2d 406)

RUFFIN, Judge.

Angela Bigley, Dianne Walker, and Albert Dunn (collectively plaintiffs) sued B. J. Mosser for libel. Mosser had previously sued each of the plaintiffs for libel in separate actions. The trial court granted Mosser's motion to dismiss plaintiffs' complaint, finding that their claims were logically related to those asserted by Mosser in her prior libel suits and thus should have been raised as compulsory counterclaims in such actions. Because plaintiffs' claims were not compulsory counterclaims, we reverse.

"OCGA § 9-11-13 (a) provides that, if a claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, such claim must be asserted as a compulsory counterclaim. 'Same transaction or occurrence' has been broadly and realistically interpreted by the appellate courts to mean whether or not there exists a logical relationship between the respective claims of the parties." (Citations and punctuation omitted.) *Aycock v. Calk*, 228 Ga. App. 172, 174 (491 SE2d 383) (1997). "A party may not raise issues arising out of the same transaction which should have been pled as a compulsory counterclaim in another separate suit. If the first suit is completed, then res judicata serves to bar proceeding with the second action." (Punctuation omitted.) *Trust Co. Bank of Northwest Ga. v. Shaw*, 182 Ga. App. 165, 166 (2) (355 SE2d 99) (1987). If the prior action is still pending, the trial court should dismiss the claim without prejudice, and the plaintiff may seek to raise the omitted counterclaim in the prior action. See *Stowers v. Guthrie*, 196 Ga. App. 86-87 (395 SE2d 371) (1990); *Harbin Lumber Co. v. Fowler*, 137 Ga. App. 90, 93-94 (2) (222 SE2d 878) (1975).

Apart from a certified copy of the complaint in one of the prior actions, Mosser did not submit any evidence whatsoever in support of her motion to dismiss, and no evidentiary hearing was held on the motion.[1] The trial court's order indicates that it is based upon "the pleadings, the exhibits to Plaintiffs' complaint in this case, and the statements of facts set out in the parties' briefs." However, although

---

[1] The record contains a copy of a notice of hearing indicating that a hearing was to be held on the motion to dismiss and certain discovery motions. However, the transcript of this hearing reflects that it was limited to the discovery motions.

the trial court could validly consider factual representations made by plaintiffs in their pleadings as admissions in judicio, *Ford v. Uniroyal Goodrich Tire Co.*, 231 Ga. App. 11, 14 (497 SE2d 596) (1998), it was not authorized to consider, as evidence supporting Mosser's motion, factual representations made by Mosser in her pleadings that are not otherwise supported by the record. See *Mullins v. Belcher*, 159 Ga. App. 520, 521 (3) (284 SE2d 35) (1981) ("a brief is not admissible as evidence and the court cannot consider factual representations in a brief which do not appear in the record").

Examined in this light, the record reveals the following relevant facts. Mosser is the owner of Prestige Properties, Inc. (Prestige), a property management company that provided management services for various homeowner associations, including the Lake Tara III Townhouse Association (Tara). Prestige managed Tara until its contract was terminated by Tara's board of directors.

In 1996, Edwin Ceccarelli ran against Dunn for a seat on Tara's board of directors, upon a platform that included returning the property management to Prestige. On March 8, 1996, plaintiffs, who opposed Ceccarelli's candidacy, distributed a flyer in and around Tara which Mosser contends contained libelous statements about her. Based on this flyer, Mosser filed separate libel actions against each of the plaintiffs. In these actions, Mosser claimed that the flyer misquoted a Georgia Real Estate Commission ruling regarding Mosser's fitness to act as a real estate broker. Neither Bigley, Walker, nor Dunn asserted a counterclaim against Mosser in these actions.

Ceccarelli's supporters in the board election created the Lake Tara III Advocate (the Advocate), a newsletter supporting Ceccarelli's candidacy, and distributed the Advocate to Tara residents. Plaintiffs allege that Mosser authored certain libelous statements printed in the Advocate's February, March, and August 1996 issues. These issues questioned plaintiffs' management of Tara and alleged that plaintiffs acted improperly in, among other things, conducting board elections and preventing board members from reviewing records.

In January 1997, plaintiffs filed the present action against Mosser for libel arising from the three Advocate issues. The complaint alleges that the three issues "contained false and malicious statements regarding Plaintiffs' honesty and competency to operate and manage [Tara]." Mosser moved to dismiss the complaint, asserting that plaintiffs should have asserted their claims as compulsory counterclaims in her prior actions. The trial court granted the motion, holding that there was a logical relationship between the claims

because they all arose out of the disputed board election.[2]

Georgia's compulsory counterclaim statute, OCGA § 9-11-13 (a), is essentially identical to Rule 13 (a) of the Federal Rules of Civil Procedure, and Georgia courts have relied upon federal cases in construing the Georgia statute. See, e.g., *Myers v. United Svcs. Auto. Assn.*, 130 Ga. App. 357, 360 (203 SE2d 304) (1973). Indeed, the "logical relationship" test is largely derived from the United States Supreme Court's holding in *Moore v. New York Cotton Exchange*, 270 U. S. 593, 610 (46 SC 367, 70 LE 750) (1926) that " '[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."

Although numerous Georgia cases have applied the logical relationship test, they have not discussed what factors are to be considered in determining whether such a relationship exists.[3] Clearly, the mere fact that some tangential relationship may be articulated between two claims is not sufficient to find them "logically related" for purposes of the compulsory counterclaim statute.

In analyzing this issue, federal courts have held that a "logical relationship . . . arises (1) when the same aggregate or operative facts serve[ ] as the basis for both claims; or (2) the case facts supporting the original claim activate[ ] legal rights of the defendant that would otherwise remain dormant." *Majik Market v. Best*, 684 FSupp. 1089, 1090 (N.D. Ga. 1987). See also *Eagerton v. Valuations, Inc.*, 698 F2d 1115, 1119 (11th Cir. 1983); *Revere Copper & Brass v. Aetna Cas. &c. Co.*, 426 F2d 709, 715 (5th Cir. 1970). The logical rela-

---

[2] As noted above, except for a copy of her complaint against Dunn, Mosser did not file certified copies of any of the pleadings in the prior actions. Although she did file a certified copy of her complaint against Dunn, this complaint does not attach a copy or otherwise indicate the nature of Dunn's allegedly libelous statement. We have previously held that, " '[i]n order to prove res judicata or collateral estoppel, a litigant must introduce those portions of the prior proceeding, duly certified, which are necessary to prove the defense.' " *Bradley v. British Fitting Group, PLC*, 221 Ga. App. 621, 622 (2) (472 SE2d 146) (1996). The same principle applies in this case, since "[t]he reason that a failure to assert a compulsory counterclaim may operate to bar the subsequent assertion of that claim in a separate suit is because of the application of the doctrine of res judicata." *Walker v. Bishop*, 169 Ga. App. 236, 239 (2) (a) (312 SE2d 349) (1983). Because Mosser failed to introduce certified copies of pleadings in the prior cases showing their relationship to the claims in this case, it is arguable that this fact alone required denial of her motion to dismiss. However, it is not necessary to reach this issue, since it is apparent that the claims raised in this action were not required to have been asserted as compulsory counterclaims in the prior actions.

[3] See, e.g., *Aycock*, supra at 174; *Oh v. Bell*, 221 Ga. App. 276, 278 (470 SE2d 807) (1996); *Goss & Goss Dev. Co. v. First Union Nat. Bank of Ga.*, 196 Ga. App. 436, 437 (1) (396 SE2d 19) (1990); *Trust Co. Bank of Northwest Ga.*, supra at 166; *Idowu v. Lester*, 176 Ga. App. 713, 714 (1) (337 SE2d 386) (1985); *Medlin v. Carpenter*, 174 Ga. App. 50, 51 (2) (329 SE2d 159) (1985); *Walker v. Bishop*, supra at 238 (2) (a); *Schoen v. Home Fed. Sav. & Loan Assn. of Atlanta*, 167 Ga. App. 644, 645 (1) (307 SE2d 72) (1983); *P & J Truck Lines v. Canal Ins. Co.*, 148 Ga. App. 3, 4 (251 SE2d 72) (1978); *Myers*, supra at 360-361.

tionship test "requires a determination of 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' *Harris v. Steinem*, 571 F.2d 119, 123 (2nd Cir. 1978)." *Blue Dane Simmental Corp. v. American Simmental Assn.*, 952 FSupp. 1399, 1410 (D. Neb. 1997). "[T]he ultimate inquiry is whether the facts in the main claim and counterclaim are both 'common' and 'operative.' " Id. at 1408, n. 5.

In this case, although the board election provided the backdrop for each of the allegedly libelous statements, the election itself is not the operative fact upon which all the various claims are based. Rather, each claim is based upon a different statement, made at a different time and in a different publication. See *Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc.*, 205 Ga. App. 94, 97 (2) (421 SE2d 550) (1992) (every publication of libelous matter is separate cause of action). Mosser's claims are based upon an allegedly libelous statement concerning a Georgia Real Estate Commission ruling on her fitness to act as a real estate agent. In contrast, plaintiffs' claims are based upon statements regarding their allegedly improper actions in managing the property. The success or failure of the various claims will depend upon whether *each particular statement* was false and defamatory. Proof that plaintiffs' statements about the Georgia Real Estate Commission ruling were false and defamatory is irrelevant to the issue of whether Mosser's allegations of mismanagement are false and defamatory. The fact that the statements were made in the context of a board election is only marginally, if at all, significant to the resolution of the claims.

*Wigglesworth v. Teamsters Local Union No. 592*, 68 FRD 609 (E.D. Va. 1975) is a federal case involving a situation somewhat analogous to the present case. In *Wigglesworth*, a union member sued his union for violating certain of his rights under the Labor-Management Reporting & Disclosure Act, 29 USC § 401 et seq. Specifically, the complaint alleged that, during certain union meetings, the plaintiff was prevented from exercising his right to freedom of speech and was denied his request to have the union membership informed of their rights as required by the Act. Id. at 610-611. On the day he filed his complaint, the plaintiff held a press conference in which he accused the union of being dominated by the Mafia and claimed that a past union election had been "fixed." Id. at 611. The union filed a counterclaim against the plaintiff for slander arising out of these remarks.

In concluding that the union's counterclaim was permissive and not compulsory, the court rejected the notion that there was a logical relationship between the claims. The court noted that the plaintiff's claim was based solely on the union's alleged conduct at the specific

meetings in question. "Determination of the validity of that claim is limited to ascertaining whether the challenged union meetings were conducted in conformity with the mandates of the Act. However, defendants' counterclaim for libel and slander is predicated on events which are in no wise part of the transactions or occurrences which gave rise to plaintiff's claim." *Wigglesworth*, supra at 612.

It is clear that the claims in *Wigglesworth* were related on some level, as they all related to allegations by the plaintiff of improper conduct by the union. Indeed, the plaintiff's allegedly slanderous remarks were made in a press conference at the same time he filed his complaint. However, the court found that the claims were not "logically related" for purposes of the compulsory counterclaim rule because they were based on separate and distinct occurrences.

Similarly, in this case, there is some superficial relation between the various libel claims, as they are all based upon statements made in the context of a disputed election. However, the election itself is not the subject matter of each of the claims; it is the individual statements themselves, and their truth or falsity, that constitute the subject matter of the claims. Evidence regarding plaintiffs' alleged defamatory statements is largely irrelevant to the question of whether Mosser's statements were false and defamatory.

In cases where we have found a logical relationship between claims, we have generally focused on the fact that both claims arise out of the same basic dispute or the same contractual relationship between the parties. For example, in *Goss & Goss Dev. Co. v. First Union Nat. Bank of Ga.*, 196 Ga. App. 436, 437 (1) (396 SE2d 19) (1990), a debtor's claim for wrongful foreclosure was held to be a compulsory counterclaim to the lender's suit on the note, since both claims were based on the lender's extension of credit to the debtor. In *Oh v. Bell*, 221 Ga. App. 276 (470 SE2d 807) (1996), a shoe repairman obtained a criminal arrest warrant for his customer after the customer refused to pay for certain repair services. We held that the customer's claim for malicious prosecution was logically related to the repairman's suit for breach of contract, since both actions related to the customer's failure to pay for the shoe repair services. Id. at 277-278. In *Myers*, supra at 360-361, an insured's third-party complaint against his insurer for stubborn litigiousness was found to be logically related to the insurer's declaratory judgment action against the insured, since both actions rested on the same insurance contract. In *Medlin v. Carpenter*, 174 Ga. App. 50 (329 SE2d 159) (1985), a corporation sued an employee for misuse of company funds. The employee subsequently sued the corporation and its president, alleging, among other things, that the president slandered him by making accusations of misuse of funds. We found that this action was logically related to the corporation's prior lawsuit, since the alleged misuse of

funds was the "gravamen" of such suit. Id. at 53-54 (5).

In each of these cases, we found that the claims were logically related because they arose out of the same dispute between the parties or the same contractual relationship, and not merely because some fact was common to the various claims. In contrast, the claims in the present case are tied together by the simple fact that the different statements were made in the context of the same election. Because the election is not the operative fact underlying all of the various claims, we do not believe that "considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." (Punctuation omitted.) *Blue Dane*, supra at 1410. Accordingly, the trial court erred in dismissing plaintiffs' claims on the ground that they constituted compulsory counterclaims in Mosser's prior actions.

*Judgment reversed. Pope, P. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED DECEMBER 3, 1998 

*Stevens & Associates, Ronald S. Stevens, James B. McClung*, for appellants.

*Erck, Dever & Merlin, Hayes M. Dever, Judith W. Bowman, Douglas M. Robinson*, for appellee.